Oh, yay. Oh, yay. Oh, yay. The Honorable Appellate Court Fifth District State of Illinois is now in session. The Honorable Justice Cates presiding along with Justice Welch and Justice Vaughn. The first case this morning is 5 22 0 202 people versus Jeffrey Chisholm, arguing for the defendant. Appellant is Chris. Chris Seeloff, arguing for the state appellee is Adam Trejo. Each side will have 10 minutes for their argument. The bill will also have five minutes for rebuttal. Please know that the clerk is permitted to record these proceedings. Good morning, gentlemen. Good morning, Your Honors. Mr Seeloff, you go first. Are you ready to proceed? Yes, Your Honor. All right. You may do so when ready. Your Honors, counsel may please the court. My name is Assistant Appellate Defender Chris Seeloff and I represent the defendant appellant, Mr Jeffrey Chisholm. This case represents the figurative death by 1000 cuts as the ineffective assistance started pretrial and continued through to the eventual motion to withdraw his counsel. These errors piled up and created an insurmountable obstacle to Mr Chisholm receiving a fair trial. The circuit court should have recognized the complete breakdown in the attorney client relationship and appoint a new counsel at either the crankle hearing or the motion withdraw. Instead, because it erred in denying both Mr Chisholm's and Karando's motion to withdraw, Mr Chisholm respectfully requested this court vacate his conviction and remand for the appointment of new counsel to investigate his case. Turning first to the ineffective assistance claims that Mr Chisholm raised at the crankle hearing, he first alleged that Karando did not investigate his case, did not file motions to quash arrest and suppress evidence pretrial, did not explain his homelessness to the jury during the trial on his behalf. Uh, turning to that first claim I mentioned, the failure to investigate the case, I want to highlight this one because it really is the heart of all of Mr Chisholm's ineffective assistance claims throughout his time in the circuit court and now in the appellate court there, as I'm sure we can all agree, there is no excuse for failing to investigate a defendant's case. And Mr Chisholm presented evidence that Karando failed to do a thorough investigation of all aspects of this case, as denoted by the other claims that I listed at the crankle hearing, turning first to failing to file a motion to quash arrest and suppress evidence. There was a legitimate question as to whether the search warrant was based on appropriate testimony from police officers, as Mr Chisholm raised that the officers perjured themselves in presenting the evidence for the search warrant. But Mr Chisholm's initial counsel, Tom Moyer, had said that he intended to subpoena the confidential informant that formed the basis for the search warrant because he also believed that there was an insufficient basis for the search warrant. However, after he withdrew and Karando stepped into the case, not only was the confidential informant ultimately not subpoenaed, but he was never discussed again by Karando, let alone investigated further. And she investigated that confidential informant, as was clearly the strategy before she entered the case, she may well have discovered more evidence to support Mr Chisholm's claim, and his arrest may have been quashed and the evidence suppressed. As for failing to explain Mr Chisholm's homelessness to the jury, failing to do so prevented the jury from hearing evidence that he was registered at a different address than the home that was searched and, along with the motion to quash arrest and suppress evidence, would have injected further reasonable doubt into this case. Finally, his final claim raised at the critical hearing that Karando would not submit exhibits or evidence. The evidence he wanted her to present was the confidential informant and evidence of his homelessness, as discussed above. These claims alone should have been enough for the circuit court to at least grant new counsel to investigate the case. I believe, as this court and opposing counsel I'm sure is well aware, appointing counsel at a critical hearing does not necessarily mean that Karando would have been dismissed from the case. However, new counsel had been appointed to investigate, and if there were claims with merit to go through with that, and potentially then eventually a finding of ineffective assistance, but this was not she's gone because she screwed up and he needs a new trial, granting critical counsel would have simply been there's an arguable doubt, which is a standard that we apply to crank the claims, and based on the claims he raised there was arguable doubt here as to Karando's effectiveness. Furthermore, how do you know Mr. Seloff that Karando didn't investigate and find out that CI was not worth calling? Because your honor, her, based on a Mr. Chisholm's claims at the other instance after that, including withdrawal hearing, Mr. Chisholm said that every time he would present evidence to Karando that he would like investigated, the only answers he received were no, that he told she told him that she was not going to investigate the case, that he should fire her if he doesn't like her representation, that she believes that he was guilty, that he should just take a plea deal because otherwise he's going to go to prison for a very long time, and also Karando never denied that she did not investigate the confidential informant or that she, that the motion to quash arrest and suppress evidence didn't have a basis. The only reason for not filing that motion was that she believed that it would fail, but there's no, she didn't actually ever discuss the investigations she took into it. It was just a conclusory statement about the ultimate success of the motion, which based on Mr. Chisholm's claims and the evidence available in the record, shows at least arguable neglect of the case. In addition of the Krankel hearing, there were claims that were apparent on the record, though not affirmatively raised by Mr. Chisholm. The state takes issue with Mr. Chisholm raising these claims in his brief, saying that there is no case law allowing a defendant to raise new Krankel claims for the first time on appeal. However, a circuit court is allowed to investigate counsel's performance at trial when ruling on a Krankel motion, and these additional claims were meant to show that the circuit court could have relied on its memory of these additional instances of ineffective assistance in ruling on the Krankel motion, and also to show what the appointment of new Krankel, a new counsel at the Krankel hearing, would have ultimately resulted in. To that end, additional claims available on the face of the record include that Karando did not sever counts 2, or count 2 from counts 1 and 3, count 2 being an unlawful possession of a weapon by a felon charge, which severing that charge might have been incredibly beneficial and potentially resulted in an acquittal on the other charges that were severed. Additionally, Karando did not excuse juror Ivory, who during war gear said, I have finals this week, through the week of trial. I can't get them rescheduled. I haven't been able to get them rescheduled. I'm not going to be able to pay attention to this trial. I'm going to be too concerned about potentially failing my final semester of senior year and losing out on my job opportunities. Karando also did not object to Detective Sneed's characterization of the room that was searched as belonging to Mr. Chisholm, when the whole theory that Karando was raising was that not only were these not Mr. Chisholm's things in the room, but it wasn't his room. So she allowed Detective Sneed to effectively tell the jury actually, as like a matter of fact, it is his room. A more competent attorney in that position would have simply objected and pointed out this was the whole contested issue in this case. And finally, during its closing argument, the state shifted the burden of proof to Mr. Chisholm by arguing to the jury that Mr. Chisholm never put anybody else in that room. He never said it was anybody else that did it. Criminal defendants have the presumption of innocence through to the end of the trial. The state cannot require a defendant to prove themselves innocent because it is the state's burden of proof to prove a defendant guilty beyond a reasonable doubt. Had a critical counsel been appointed, they also could have raised this issue. By the time of the motion to withdraw, the circuit court had all this information available to it. Additionally, Karando herself had moved to withdraw, citing the Mr. Chisholm was creating outbursts at trial, although from my review of the record, the only potential outburst I can find was one instance where Mr. Chisholm said objection in the middle of court. What she's more likely referring to is his repeated requests made during breaks outside the presence of the jury to have Karando withdrawn because as he kept stating over and over and over again and eventually again at the Krankl hearing and then again at the motion to withdraw, she's not listening to anything I have to say. She's only telling me no. She tells me to hire somebody else if I don't like her, to only take a plea deal, that I'm going to prison for the rest of my life. It's also clear that Mr. Chisholm's repeated pleas for anybody to please pay attention to his case were taken personally by Karando during, and this was revealed at the motion to withdraw hearing when discussing the ARDC complaint that Mr. Chisholm filed against her. She said he wrote everybody. I think he's written everybody involved. I don't know if the court reporter got a letter. I wouldn't be surprised if they did because he's written many letters. The evidence shows that Mr. Chisholm, from the time Karando entered his case until this appeal, has been begging for anybody to please just look through the record, look through the case, and please get me another attorney who will actually pay attention to me. Karando's response was, man, this guy likes to complain. I think that the circuit court had plenty of evidence before it at both the Krankel hearing and the motion to withdraw, and the fact that it didn't appoint new counsel at either stage was an abuse of discretion. With the remaining time, if you have any questions, I'd be happy to answer them. Do you think that the ARDC complaint should be dispositive of whether a lawyer is allowed to withdraw? Well, so an ARDC complaint can obviously be an impetus for a defense attorney to file a motion to withdraw, and while it is true that an ARDC complaint standing alone does not provide a sole basis for a circuit court, it does not require, I should say, a circuit court to grant a defense counsel's motion to withdraw, and the state argues this as well in its response brief citing to People v. Jackson and People v. Childress. This language goes, in those cases, goes on to say that when there is an ARDC complaint, the circuit court is required to inquire into the details of that complaint to determine whether it is a strong basis to withdraw, and the circuit court did not do that in this case. It knew of the ARDC complaint because both Mr. Chisholm and Karando discussed it, but it never asked about the details, and its only explanation in denying the motion to withdraw was to cite effectively that language without citing to the case. It said the ARDC complaint standing alone is not enough for me to grant this motion to withdraw, so the circuit court, while the state is correct that that is the legal standard, the language goes on in a way that the state doesn't say to in its brief, and the circuit court did not properly inquire into that claim. So, when should the circuit court have inquired into that claim? At the motion to withdraw, it was when Karando put in the motion to withdraw citing the ARDC complaint, the court was put on written notice that it had to inquire into that claim, and it did not, at least my review of the record shows that it did not, either orally at the motion to withdraw hearing, or in any written order afterwards, and so the fact that it didn't goes against that case law cited by both Mr. Chisholm and the state. Okay, thank you. Justice Welch, any questions? No questions. Justice Vaughn? No questions, thank you. All right, Mr. Trejo, is that how you pronounce it correctly? Yes. All right, would you like to proceed? Yes, may it please the court, counsel Adam Trejo on behalf of the people of the state of Illinois. Defendant in presenting his argument on appeal is really tying pieces together from different hearings and kind of presenting them as information that was presented at the Krankle hearing. Here, the defendant made multiple motions to have the chief public defender of Jackson County removed from his case multiple times, and during one of the times, the trial court even found that the defendant was attempting to obstruct justice, so when the defendant notes that defendant had made statements that the chief public defender of Jackson County had told them you could fire me, that information wasn't at the Krankle hearing, but at a prior hearing to that, the public defender denied making those statements. It's very important to really zone in on what occurred at the Krankle hearing, and at the Krankle hearing, the defendant made vague superficial claims and didn't really flesh them out, and I'd like to note that the defendant isn't arguing that the trial court didn't conduct a proper inquiry. He's just saying that the trial court manifestly erred in concluding that this shouldn't continue further. For example, the defendant at the Krankle hearing said, he didn't investigate my case. What does that mean? That's vague. The defendant didn't flesh this out. Now, at the hearing, the public defender did indicate Didn't he also raise the issue about the search warrant at the Krankle hearing? Yes, and again, the state would like to note that the search warrant is not within the record, but the search warrant contained information. Again, the trial court denied these claims because it also concluded that this was a matter of trial strategy, and at a preliminary hearing, one of the agents testified that they had a confidential informant conduct controlled purchases at the residency from the defendant, and introducing the search warrant as the defendant wanted at trial would have introduced evidence to the trial fact of uncharged prior drug transactions with the defendant ultimately. That would have prejudiced the defendant because he was being charged with unlawful possession of controlled substances. Why would his attorney want to introduce the confidential informant and have the jury hear information regarding prior drug transactions that happened one month before the execution of the search warrant? And that's that's this would be an emotion to suppress, which would be outside the presence of a jury. Correct. And when the defendant stated this as one of his claims, he never identified the basis. He never indicated why he believed that his attorney should have filed a motion to suppress evidence based on an insufficient warrant. There is no basis stated on behalf of the defendant here. And again, isn't that the whole point? Is he failed to investigate that issue? That she failed to investigate? I'm sorry, she failed to. Oh, no. Again, there's no information within the record that she didn't investigate that. Well, she never said she did. And that's not required by the case law. The case law indicates that the trial court may question the attorney is but is not required to. Having the attorney trial court did a good job on the crankle hearing in this case. Well, it's an inquiry. And that's not that's not the issue raised by the defendant. The the I'd really like to make this clear. If the defendant believed that the trial court didn't conduct this inquiry correctly, he could have raised that issue. And that issue was not raised on appeal. And I noted that within the state's brief. The defendant is simply arguing that based that based on the information collected, it should have advanced to the second stage, and it should have appointed an attorney. The defendant is not arguing that the inquiry was insufficient. And that argument has been forfeited. But the fact that she failed to sever the weapons charge from the other charge, that issue was never raised at the crankle hearing. And as I stated in the brief, there's no case law indicating that a defendant has to raise, it can raise new crankle issues. Again, the issue is whether the trial court manifestly erred in denying these crankle claims. How can this court conclude that the court manifestly erred in denying claims that whenever before the court, if defendant wanted to bring those claims on appeal, he could have claimed an effective assistance of counsel, a brand new one. And that would have brought the issue before this court, the defendant did not. What about the emotion to withdraw and the fact that the attorney is now saying, Mr. Rondo is now saying, I can't work with him. He's filed an ARDC complaint. She's obviously upset by the language that she's saying every he's written letters to everybody. Why wouldn't an attorney withdraw under those circumstances? Well, because the motion was asking for an extreme um, remedy, uh, the chief public defender was asking not only herself to be removed, but her entire office. She made a comment that everybody should be removed, but that really wasn't before the court. What was before the court was just her motion. And again, the issue, again, the Senator view is an abuse of discretion. It's not DeNovo. It could the trial of court of granted a new attorney. Yes. But is that an abuse of discretion? No. For the following reasons, um, the, the attorney had filed a motion for, for a new trial. Uh, she was waiting to argue it. And the sole basis for filing a motion to withdraw was just a reaction to the defendant filing an ARDC complaint against her. And within that motion, she stated that the ARDC, uh, review board indicated that the complaint was unwarranted and the public defenders and officer of the court and the trial court was permitted, allowed to take her word that this was the finding by the review board. Really? I mean, uh, without any letter or evidence of any kind, uh, the court didn't have to make any further inquiry, except upon the representation of the attorney who says she needs to get out. Um, again, she is an officer of the court and yes, the, and as an officer of the court, the, uh, the, uh, the trial court was permitted to, uh, take the motion, uh, and its contents as being truthful. But as the state, as the state noted in its brief, uh, the fact that a defendant has an ARDC complaint against an attorney does not by itself, um, justify granting a motion to withdraw, especially at this late stage of the proceedings. But isn't Mr. Sealoff correct that your case citation says that the court should make further inquiry? The ARDC complaint alone is not enough, but there should be some inquiry by the court. Well, uh, again, the, uh, the. Is that what the case law says? Um, again, it's good practice to, uh, to further inquire, but what is it unreasonable to deny that motion and to grant the entire office, uh, to be removed? No, absolutely not. Wait, that doesn't the fact that she said her entire office should be removed further indicates the fact that she should be allowed to withdraw. I mean, there are other attorneys that are standby attorneys that this, the circuit court has available to it, even if you know your argument and no standby attorney was identified within the motion. I think it would have been different. The motion didn't ask for her whole office to be removed. It did. I could pull up the motion. It did it. It asked for the entire office to be removed. Okay. And, and now standby council was identified. With that motion before the court as an officer of the court, as you say, that the court should have allowed her with to withdraw. You have an ARDC complaint. She says she can't get along. She says her whole office should be allowed to withdraw. And you don't think that's enough. Uh, no, the fact that, um, that, that again, there's case although there's bickering between an attorney and a defendant is not sufficient enough to warrant a granting this type of motion, uh, absent more, there is no abuse of discretion in this case. Absent further questions, the people of the state of Illinois, she didn't remove the juror, the juror. Again, this claim was not raised at the in its brief. The, uh, the trial court asked the defendant, are these all the claims that you want to bring? And the defendants said, yes, there are no other claims I'm bringing. If the defendant wanted these claims before the court, the defendant could have briefed a separate issue claiming ineffective assistance of council. But as the defendant has framed the issue, this court cannot conclude that the court manifestly erred in denying claims that were never before the court. Could this court find that the failure to appoint new counsel was the basis for the defendant not raising these additional claims? In other words, had another attorney been appointed, uh, it would have been revealed that the search warrant, the CI, those issues should have been raised under an assistance of counsel. That's speculation. What another, I can't speculate to what another attorney would have raised. No, my question is additionally, could another attorney have raised those issues, assuming they existed as an effective assistance of counsel claim? Uh, well, yes. And as I, as I said, as I said, now the defendant himself could have raised it on appeal by filing a separate ineffective assistance of counsel claim. Okay. Uh, Justice Welch, any questions? No questions. All right. Justice Vaughn. No other questions. Thank you. All right. Thank you. Um, thank you, uh, Mr. Trejo. Uh, Mr. Sealoft, do you have rebuttal? Yes, Your Honor. Um, briefly, I, the, uh, state asked for a citation about the ARDC complaint requiring the circuit court to inquire into the details of the complaint that was cited in Mr. Chisholm's opening brief. And again, at the reply brief, it's people versus Jackson, 243 LF third at 1035 to 1036. Um, as to the point of the state making much about Karando asking for the whole, uh, probably the chief public defender asking for the entire public defender's office of the county to be taken off the court, the case, uh, the state citing to the ready, willing, and able standard and people versus Volberding from the second Mr. Chisholm noted that standard doesn't apply. That standard only applies in this case in cases where privately retained counsel withdraws. And it is uncertain whether the defendant will retain new private counsel or is asking for a new court appointed counsel people versus Abernathy, also from the second district 12 years earlier cited to the public defender statute and the authority of circuit courts to appoint as justice case noted, not only the public defender's office, but standby counsel to that end Karando would have known about this, which is probably why she included it in her motion to withdraw that the whole office be removed because she had previously served as contract public defense counsel for Jackson County before working for the public defender's office officially as the chief public defender. Uh, and finally, just a few points about the state raises about the level of evidence available at the critical hearing itself at the motion of draw hearing itself. The state says that Mr. Chisholm is trying to pull all these pieces of evidence together from disparate parts of record. The only things he raised at the crankle hearing were X, Y, and Z. That's true. But again, the, the fact of the matter is the practical hearing is about all of the representation up to the point of the crankle hearing to say that the only thing that could ever be considered at a crankle hearing is the statements of legal layman, non-legal experts like Mr. Chisholm who don't have access to the transcript, don't have the legal education to understand all of the totality of the evidence that they could level against their, uh, defense attorney for an ineffective assistance claim would effectively make crankle, uh, at the very least much weaker than the standards that are there. And as a justice case pointed out, and as Mr. Chisholm pointed out, both in his opening brief and in his reply brief, those additional claims apparent on the face of the record are evidence that at the very least had crankle counsel been appointed, then more ineffective assistance claims would have been seen. Um, and, uh, again, the, uh, question of whether Mr. Chisholm can raise these claims at all in the reply brief, he did know that he note, uh, that he did not cite to case law in support of that. However, in the reply brief, he did make mention that he had cited two people versus more previously in the opening brief, which does list out those three standards that a circuit court can rely on, including questioning defense counsel, questioning the defendant and relying on its memory of defense counsel's performance at trial. And again, those were not necessarily put forward as substantive claims that were at the crankle hearing, although they could have been considered by the circuit court, but more so to show the prejudice resulting from the denial of the crankle decision. Um, and, uh, finally, just as a, the matter of trial strategy and there not being enough information in the record to demonstrate the claims. And if Mr. Chisholm wanted to raise these additional claims, he should have just brought a, uh, a separate ineffective assistance claims to that Mr. Chisholm would argue. There's only so many pages that this court will allow a defendant to file in his opening brief in just raising the crankle claims and the motion would draw issue. He had already almost reached the page limit and therefore there simply wasn't enough room to bring all of the additional claims against Karando, which is sort of the heart of the argument here. There was so much that was wrong in this case. As I noted in my intro, in my initial time, this was death by a thousand cuts. She didn't come out and tell the jury, by the way, my guy's guilty and you shouldn't believe anything he says. She says she did this by saying no repeatedly to every question by not presenting evidence that he asked for by all the little million little things that add up to this that's why he's asking for a new counsel to investigate the case. Okay. Um, your time is expired. Mr. Seeloff, Justice Welsh, any questions? No questions. No questions. All right. Justice Vaughn. No questions. Thank you. All right. Thank you gentlemen for your time here today. This matter will be taken under advisement. We'll issue an order in due course.